CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 17 2012

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RICHARD ALLAN NORMAND, | ) |
| Plaintiff, | ) Civil Action No. 7:10-cv-00551 |
| v. | ) **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, | ) By: Hon. Glen E. Conrad |
| Defendant. | ) Chief United States District Judge |

The plaintiff, Richard Allan Normand ("Normand" or "plaintiff"), initiated this civil action on December 10, 2010 under the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 2671–80 (2006), alleging that the United States of America ("defendant"), through its agents and employees, negligently failed to diagnose and treat his prostate cancer in a timely manner, causing him to undergo radiation treatments which rendered him impotent. The case is currently before the court on the defendant's motion for summary judgment, in which the defendant argues that the plaintiff has presented insufficient evidence to support findings regarding the applicable standard of care, breach of the standard of care, and causation, all essential elements of the plaintiff's negligence claim.[1] For the reasons announced from the bench at the conclusion of the January 12, 2012 hearing on this motion, and as set forward in this opinion, the court will grant in part and deny in part the defendant's motion for summary judgment.

---

[1] In the original brief in support of its motion for summary judgment (Docket No. 18), the defendant requested summary judgment only on the issue of causation. However, the plaintiff's responsive brief addressed the issue of causation and also the issues of the applicable standard of care and of breach of that standard. (Docket No. 20.) The defendant responded with another brief in which it requested summary judgment on the issues regarding the applicable standard of care and of breach of the standard, in addition to its previous request for summary judgment on the issue of causation. (Docket No. 23.)

I.  **Factual and Procedural Background**

The relevant facts of this case, for the most part, are not in dispute.[2] Although the United States is the named defendant in this case, Normand alleges that the negligence arose from the acts of two health care providers at the Veterans Administration Medical Center ("VAMC") in Salem, Virginia—Shannon Cohen ("Cohen"), a family nurse practitioner, and Dr. Walter Wade ("Dr. Wade"), a urologist.

Normand began receiving treatment from the VAMC in 1996. (Docket No. 20 at 1–2.) Relevant to this case is that Normand's Prostate Specific Antigen ("PSA")[3] levels rose steadily each year after his 2000 results.[4]

On September 27, 2005, the plaintiff met with Cohen[5] to review the results of his latest PSA test. (Docket No. 18 at 3.) Noticing a rise in Normand's PSA, Cohen referred him to the VAMC urology department for a consultation. (Id.) On October 6, 2005, Normand met with VAMC urologist Dr. Rama Varma ("Dr. Varma"). (Id.) Abnormal results from a digital rectal examination, combined with Normand's rising PSA, prompted Dr. Varma to recommend a transrectal ultrasound biopsy. (Id.) The biopsy was scheduled, but was cancelled by Normand on October 20, 2005. (Docket No. 18-5 at 3.)

---

[2]  The court presents the facts in the light most favorable to Normand, the nonmoving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).
[3]  PSA is a marker for diagnosing prostate cancer.
[4]  Normand's PSA results for the time in question were as follows:

| Date | PSA |
|---|---|
| 8/26/00: | 1.4 |
| 2/20/01: | 1.6 |
| 2/21/02: | 1.7 |
| 10/6/03: | 2.3 |
| 7/9/04: | 3.3 |
| 9/25/05: | 4.8 |
| 4/13/06: | 5.9 |
| 1/3/07: | 7.6 |
| 8/22/07: | 11.1 |

(Docket No. 20 at 2–3.)
[5]  Cohen treated Normand during the time frame relevant to this case, beginning in 2000. (Docket No. 20-1 at 20.)

2

The next date of note was about six months later, on April 13, 2006, when a test revealed that Normand's PSA had risen to 5.9. (Docket No. 20 at 3.) Normand also had his first meeting with Dr. Wade on that day. (Docket No. 18 at 3.) Based on the continuous rise of Normand's PSA and on the velocity of the rise, Dr. Wade scheduled a biopsy, which was performed on May 18, 2006. (Docket No. 20 at 3.) The biopsy revealed that none of the six samples contained cancerous material; however, according to the biopsy report, one sample displayed a "single focus of atypical glands suspicious for malignancy." (Docket No. 18-7.) Dr. Wade discussed the results with the plaintiff on May 30, 2006. (Docket No. 20 at 3.) The plaintiff asserts that Dr. Wade failed to reveal to him that one of the samples displayed a suspicion for "malignancy"; instead, the plaintiff avers, Dr. Wade advised him only that the test returned "suspicious-looking results." (Docket No. 18-14 at 3; Docket No. 20-1 at 61.) At the conclusion of the meeting, Dr. Wade instructed Normand to return to the VAMC in one year, on May 31, 2007, for a follow-up visit and for another PSA test. (Docket No. 18 at 4; Docket No. 20 at 3.) Dr. Wade did not schedule a repeat biopsy at that time. (Docket No. 18-8.)

Normand did not wait until the May 31, 2007 appointment to return to the VAMC. Instead, he returned on January 3, 2007, complaining of nocturia (frequency of urination at night). (Docket No. 18-9 at 2.) A test on this date revealed that his PSA had risen to 7.6. (Docket No. 20 at 3.) Cohen wrote to Normand to inform him of the test results and further advised that no further evaluation was required at that time, based on the pending appointment scheduled for May 31, 2007. (Docket No. 18-9 at 7.) Normand then visited Dr. Wade on February 27, 2007, and, after reviewing the latest test results, Dr. Wade scheduled another biopsy for the upcoming May 31 visit. (Docket No. 18-10.) However, Normand cancelled this biopsy, citing a conflict in his schedule. (Docket No. 18-14 at 5–6.)

3

Thereafter, the VAMC terminated Dr. Wade in June 2007 and Normand received a non-VAMC referral to Dr. David Kagey ("Dr. Kagey"), a urologist, in August 2007. (Docket No. 18 at 5.) A September 28, 2007 biopsy revealed that Normand was then suffering from prostate cancer. (Docket No. 20 at 3.) After undergoing a brief regimen of hormone therapy, the plaintiff underwent a radical prostatectomy performed by Dr. Kagey on January 30, 2008. (Id.) For most of 2008, Normand's PSA remained undetectable and, furthermore, Normand was able to obtain erections following the surgery. (Id. at 3–4.) However, his PSA began rising again towards the end of 2008 and Dr. Kagey referred Normand to Dr. Robert C. Heath, a radiation oncologist. (Id. at 4.) Normand began receiving the first of thirty-nine radiation treatments in January 2009. (Id.) Although the plaintiff's cancer is in remission, he alleges that he is now impotent as a result of the radiation therapy. (Id.)

On December 16, 2011, the United States filed its motion for summary judgment. Having been fully briefed and argued, the motion is now ripe for disposition.

## II. **Discussion**

### 1. **Legal Standard**

In considering a motion for summary judgment under Federal Rule of Civil Procedure 56, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). The court may grant summary judgment only when, viewing the record as a whole and in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the nonmoving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). For a party's evidence to raise a genuine issue of material fact that avoids summary judgment,

4

the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

2.  **Analysis**

In order to establish a negligence claim under Virginia law,[6] a plaintiff must satisfy four basic elements by a preponderance of the evidence: (1) duty, (2) breach, (3) causation, and (4) harm. Murray v. United States, 215 F.3d 460, 463 (4th Cir. 2000). "Absent the rare case in which the alleged negligent act or omission is clearly within the common knowledge of laymen, 'expert testimony is ordinarily necessary' to establish these elements." Campbell v. United States, No. 11-1554, 2012 WL 34445, at *3 (4th Cir. Jan. 9, 2012) (quoting Parker v. United States, 475 F. Supp. 2d 594, 598 (E.D. Va. 2007)); see also Webb v. Smith, 661 S.E.2d 457, 459 (Va. 2008). To satisfy these elements through the presentation of expert testimony, the plaintiff submits the de bene esse deposition testimony of Dr. Norris W. Whitlock ("Dr. Whitlock"), a board-certified urologist. (Docket No. 20-1.)

a.  **Duty (Standard of Care)**

The duty element requires the plaintiff to establish the applicable standard of care. Raines v. Lutz, 341 S.E.2d 194, 196 (Va. 1986). Because qualification of standard-of-care experts in medical malpractice cases is an issue of substantive law, Virginia law applies to the qualification of the experts proffered in this case. Peck v. Tegtmeyer, 834 F. Supp. 903, 909–10 (W.D. Va. 1992); see also Close v. United States, Civil Action No. 7:10CV0007, 2011 WL 1230266, at * 2 (W.D. Va. Mar. 31, 2011); Workman v. Baker, Civil Action No. 7:09-CV-415, 2010 WL 4054470, at *2 (W.D. Va. Oct. 13, 2010). Specifically, Virginia Code § 8.01-581.20 delineates the standard for qualifying as an expert, providing in pertinent part:

---

[6] Because the alleged negligence occurred in Virginia, Normand's complaint is governed by Virginia law. See 28 U.S.C. § 1346(b)(1) (indicating that FTCA claims are governed by the "law of the place where the act or omission occurred").

5

> A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

Va. Code § 8.01-581.20(A) (West 2011). The question of whether a witness satisfies the dictates of § 8.01-581.20(A), and thereby qualifies as an expert witness, is "largely within the sound discretion of the trial court." Workman, 2010 WL 4054470, at *2 (internal quotation marks omitted) (quoting Wright v. Kaye, 593 S.E.2d 307, 312 (Va. 2004)).

Having considered the requirements of § 8.01-581.20(A) and Dr. Whitlock's testimony, the court concludes that Dr. Whitlock, a urologist, is not qualified to render an expert opinion as to the standard of care applicable to Cohen—specifically, the standard of care imposed upon a nurse who treats a man whose PSA is tested on an annual basis.[7] In Dr. Whitlock's de bene esse deposition, he conceded that he had no knowledge of the training that a nurse practitioner undergoes. (Docket No. 20-1 at 47.) Thereafter, the exchange between defense counsel and Dr. Whitlock proceeded as follows:

> Q. So, it would be fair to say that you would not know, based on your lack of training and experience as a nurse practitioner, what the standard of care would have been for Ms. Cohen in 2004, would you?
>
> A. I am not sure what she knew, no, I don't have any knowledge on that.

(Id.)

Hence, based on Dr. Whitlock's own admission, he lacks expert knowledge of the standards that govern a nurse practitioner's performance and, therefore, pursuant to § 8.01-

---

[7] Although Dr. Whitlock asserts that he, a urologist, would have referred Normand to the VAMC urology department when Normand's PSA breached 2.0 in 2003 (Docket No. 20-1 at 20–21), he thereafter acknowledges that the prevailing FDA standard for a man of Normand's age would require a urology referral only once the PSA reached 4.0. (Id. at 46.) When asked what standard of care would apply to the performance of a nurse practitioner, assuming that the government's standard establishing a PSA of 4.0 in determining the need for further treatment was faulty, Dr. Whitlock failed to provide a definite alternative standard. (Id. at 46–47.)

6

581.20(A), is not qualified to offer an expert opinion on the standard of care applicable to Cohen in this case. In light of this decision, the court must grant the government's motion for summary judgment as to Cohen—without a qualified expert to establish the standard of care applicable to Cohen, the plaintiff is unable to satisfy the necessary duty element of his negligence claim against Cohen.

On the other hand, the court concludes that, based on the requirements of § 8.01-581.20(A), Dr. Whitlock, an active board-certified urologist with extensive clinical experience in that field, is qualified to render an expert opinion as to the standard of care applicable to Dr. Wade, another urologist. (Id. at 5–17.)

### b. Breach

Viewing the facts in a light most favorable to Normand, the nonmoving party, the court concludes that the plaintiff has presented sufficient evidence on this summary judgment motion to create a genuine issue of material fact as to whether, following the May 30, 2006 consultation with Normand concerning the biopsy results, Dr. Wade breached the standard of care when he failed to schedule a repeat biopsy within a shorter period of time. Dr. Whitlock testified emphatically that, knowing of the "suspicious" biopsy results and of Normand's constantly rising PSA, the standard of care required Dr. Wade to schedule a repeat biopsy no later than six months from the time of the May 30, 2006 consultation—sometime around the end of November 2006. (Id. at 24–26.) Instead, both parties agree that Dr. Wade did not schedule a repeat biopsy, but rather, scheduled only a return visit for a PSA test one year later, on May 31, 2007. (Docket No. 18 at 4; Docket No. 20 at 3.) Furthermore, after Normand returned to the VAMC on February 27, 2007, Dr. Wade did not schedule an immediate biopsy, but instead, scheduled a biopsy for three months later, on the May 31 appointment. (Docket No. 18-10.)

7

### c. Causation

Likewise, the court concludes that, viewing the facts in a light most favorable to Normand, a reasonable factfinder could construe Dr. Whitlock's testimony to state that it is more likely than not that, if a repeat biopsy had been performed later in 2006, radiation would not have been required and, thus, the plaintiff would not have become impotent. (Docket No. 20-1 at 30–36.) While the court notes that the plaintiff's case contains substantial weaknesses on the issue of causation (occasioned by Dr. Whitlock's vacillating testimony on this issue), the court nonetheless must view the facts in a light most favorable to the plaintiff at this stage in the case. Furthermore, the court recognizes that the plaintiff need not prove causation to a certainty, but need only prove "that the 'defendant's breach of duty was more likely than not (i.e., probably) the cause of injury.'" Murray, 215 F.3d at 463 (quoting Hurley v. United States, 923 F.2d 1091, 1094 (4th Cir. 1991)). Thus, adopting a view of the evidence that is most favorable to the plaintiff, and bearing in mind that the law of causation "deals in probabilities," Doherty v. Aleck, 641 S.E.2d 93, 97 (Va. 2007), the court is constrained to conclude that the plaintiff has presented sufficient evidence to create a genuine issue of material fact as to the issue of causation.

## III. Conclusion

As explained above, the court grants the defendant's motion for summary judgment in its entirety as to Cohen. The court again stresses that only a limited portion of the plaintiff's case against Dr. Wade survives the defendant's motion for summary judgment. Specifically, the plaintiff submits sufficient evidence to create a genuine issue of material fact only on the issues of whether Dr. Wade's failure to schedule a repeat biopsy within a shorter period of time following the May 30, 2006 consultation breached the standard of care and, furthermore, proximately caused the plaintiff's need for radiation therapy. The court denies the defendant's

8

motion for summary judgment only as to this discrete issue. However, the court grants the motion with respect to the plaintiff's claim against Dr. Wade in all other respects.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 17th day of January, 2012.

/s/ *Signature*
Chief United States District Judge